**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GUILLERMO RIVERA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 12-0168 (RLW) |
| : | |
| DEPARTMENT OF JUSTICE, *et al.*, : | |
| : | |
| Defendants. : | |

**<u>MEMORANDUM OPINION</u>**[1]

This matter is before the Court on defendants' motion to dismiss. For the reasons discussed below, the motion will be granted.

I. BACKGROUND

In the Northern District of Illinois, Guillermo Rivera ("plaintiff") "pleaded guilty to four counts of bank robbery, *see* 18 U.S.C. § 2113(a), and was sentenced to a total of 104 months' imprisonment." *United States v. Rivera*, 338 F. App'x. 532, 533 (7th Cir. 2009).[2] He is serving his sentence in the custody of the Federal Bureau of Prisons ("BOP"). *See* Civil Complaint

---

[1]   This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *Cf*. Fed. R. App. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

[2]   After having "embarked on a bank robbery spree" in Illinois, his "string of bank robberies had continued in Indiana." *Rivera*, 338 F. App'x at 533. "Indictments followed in both the Northern District of Indiana and the Northern District of Illinois." *Id*. "In July 2008, he pleaded guilty in the Northern District of Illinois and, in October, was sentenced to 104 months. Seven months later, on the eve of trial in the Northern District of Indiana, he pleaded guilty to three counts of bank robbery." *United States v. Rivera*, 393 F. App'x 385, 385 (7th Cir. 2010).

("Compl.") at 2 (page numbers designated by plaintiff).[3]  He brings this action against the United States Department of Justice ("DOJ") and the BOP alleging that he has been "the victim of many civil rights violations while in custody, at the hands of a rogue Warden, who is permitted to operate outside of the law," with respect to prisoners at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute").[4]  *Id.*

Plaintiff allegedly was "blackballed and denied employment in every department of the prison," *id.* at 5, and was denied "freedom of religious expression" when staff "confiscated [his] crucifix[,] . . . Bible and other religious study guides." *Id.*  His civil rights allegedly were further violated when staff confiscated legal materials and denied him access to the law library while plaintiff was involved in legal proceedings in an Indiana state court and a post-conviction challenge to his sentences then pending in the United States Court of Appeals for the Eleventh Circuit.[5]  *Id.* at 5-6.  Plaintiff also alleges that he was the victim of racism, in that prisoners at USP Terre Haute are assigned cells based on race such that "Whites must be housed with Whites . . . Blacks must be housed with Blacks . . . Hispanics with Hispanics etc." *Id.* at 6.  While being escorted from a local hospital back to prison in July 2011, he was allowed to fall, "causing injury to his back, neck, and shoulder," that he "[h]as been made to wear the same Dirty Clothing[] for weeks at a time" and that he "has gone without clean linens for a month or longer." *Id.* at 7.  He

---

[3]     Plaintiff submitted his complaint on a five-page preprinted form to which he attached a handwritten document titled "Civil Complaint."  Unless otherwise specified ("preprinted form"), references to the complaint are references to the handwritten Civil Complaint.

[4]     Plaintiff since has been transferred to the United States Penitentiary in Coleman, Florida.

[5]     The subject matter of the case before the Eleventh Circuit pertained to whether the sentences imposed by the Northern Districts of Illinois and Indiana were to run concurrently. The Northern District of Indiana "clarified that the Indiana terms were to commence when Rivera was sentenced in Indiana in May 2009, and run concurrently with the undischarged terms imposed in the Northern District of Illinois . . . ."  *United States v. Rivera*, 478 F. App'x 328, 329 (7th Cir. 2012).

also "has been kept in special housing as punishment for filing grievances," and the BOP "has had his grievances stalled over and over again, in an effort to discourage or confuse" him. *Id.* at 8. For these alleged harms, "[p]laintiff seeks damages in the amount of[] $15,000,000.00 (Fifteen Million Dollars) for mental and emotional duress, suffering and pain, for negligence and discrimination, inflicted upon his pe[r]son, while in the custody of the [DOJ] and the [BOP]."[6] *Id.* at 9. He also "demands an immediate release from custody." *Id.*

The Court construes the complaint as one bringing constitutional tort claims against the United States demanding monetary damages for violations of the United States Constitution by BOP officials or employees. *See Scurlock v. Lappin*, 870 F. Supp. 2d 116, 119 (D.D.C. 2012) (characterizing prisoner's complaint as "a *Bivens*-style action").[7] Defendants have filed a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, improper venue, and for failure to state a claim upon which relief can be granted. *See generally* Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 5-15.[8]

---

[6] Plaintiff declares that, "should [he] pursue Class Action Status at a later date," he may bring an action "for Civil Rights violations against other Inmates[]." Compl. at 9. As a lay person, plaintiff cannot advance the claims of any other individual. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ."); *Georgiades v. Martin–Trigona,* 729 F.2d 831, 834 (D.C. Cir. 1984) (holding that a lay person cannot appear as counsel for others); *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.") (citation omitted). Nor is plaintiff qualified to represent the interests of other inmates in a class action. *See Maldonado v. Terhune,* 28 F. Supp. 2d 284, 288 (D.N.J. 998) (quoting *Caputo v. Fauver,* 800 F. Supp. 168, 170 (D.N.J. 1992), *aff'd,* 995 F.2d 216 (3d Cir. 1993)) ("Courts have consistently held that a prisoner acting *pro se* is inadequate to represent the interests of his fellow inmates in a class action.") (internal quotation marks omitted)).

[7] Under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), a plaintiff has "an implied private action for damages against federal officers alleged to have violated [his] constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

[8] Defendants assert that, because plaintiff is not incarcerated in this district, "venue is not likely to be proper in the District of Columbia," Defs.' Mem. at 5, particularly absent a showing by plaintiff "of any compelling reason . . . or any interest in proceeding in the District of

## II.  DISCUSSION

### A.  Dismissal Under Rule 12(b)(1)

Subject matter jurisdiction is a requirement of Article III of the U.S. Constitution and by federal statute.  *See Wilson v. U.S. Dep't of Transp.*, 759 F. Supp. 2d 55, 62 (D.D.C. 2011).  It is the plaintiff's burden to establish that the Court has subject matter jurisdiction.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).  For purposes of a Rule 12(b)(1) motion, the Court accepts the factual allegations of the complaint as true, and it "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

1.  Plaintiff's Claims for Damages Under 42 U.S.C. § 1983

Plaintiff identifies two defendants to this action -- the DOJ and the BOP -- and he relies solely on 42 U.S.C. § 1983 as the basis for this Court's jurisdiction.[9]  *See* Compl. (preprinted form) at 1.  Defendants move to dismiss the complaint on the ground that sovereign immunity

---

Columbia," *id.* at 6.  They argue for dismissal of this action for improper venue or, alternatively, for transfer of this action to the United States District Court for the Northern District of Indiana, the district where USP Terre Haute is located and where the events giving rise to the complaint occurred.  *Id.*  For purposes of this Memorandum Opinion, the Court presumes that venue in this district is proper and will dismiss the complaint on the basis of the other arguments defendants raise in their motion.

[9]  In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, <u>of any State or Territory or the District of Columbia</u>, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added).

bars plaintiff's civil rights claims under § 1983 for monetary damages against these federal entities.  *See* Defs.' Mem. at 5, 11-12.

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal quotation marks and brackets omitted)); *Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."  *Lane v. Peña,* 518 U.S. 187, 192 (1996) (citation omitted).

In his opposition, plaintiff barely mentions sovereign immunity, and instead argues that qualified immunity should not bar his claims.  *See* Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 10-11.  He contends that court review of "conduct by prison officials under specific constitutional provisions such as the Eighth Amendment . . . or general principles stemming from the Due Process Clause" is available under § 1983.  *Id.* at 10.  A government official or employee sued in his individual capacity "may, depending on his position, be able to assert personal immunity defenses," *Kentucky v. Graham,* 473 U.S. 159, 166 (1985), such as qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800 (1982).  When that official or employee is sued in his official capacity, or, as in this case, if a government entity is the defendant, a qualified immunity defense is unavailable.  *See Graham*, 473 U.S. at 167.

Plaintiff identifies no provision by which the United States has waived its immunity with respect to constitutional tort claims.  Section 1983 does not apply to federal actors, *Settles v. U.S.*

5

*Parole Comm'n,* 429 F.3d 1098, 1104 (D.C. Cir. 2005), and "[d]efendants argue correctly that the United States has not consented to be sued for monetary damages based on a constitutional violation or, in other words, for a "'*Bivens*-type cause of action directly against a federal agency.'" *Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 116 (D.D.C. 2012) (citing *Meyer*, 510 U.S. at 486). Absent a waiver of sovereign immunity, this Court lacks subject matter jurisdiction over plaintiff's claims for money damages against the DOJ and the BOP. These claims therefore must be dismissed. *See, e.g., Jordan v. Quander*, 882 F. Supp. 2d 88, 97 (D.D.C. 2012); *Bourdon v. Mabus,* 813 F. Supp. 2d 200, 209 (D.D.C. 2011).

   2. Plaintiff's Claim Arising from the Confiscation of Religious and Personal Property[10]

Plaintiff alleges that staff at USP Terre Haute confiscated his crucifix, Bible, and religious study guides. Compl. at 5. Insofar as plaintiff demands monetary compensation from the United States for these actions, he must proceed under the Federal Tort Claims Act ("FTCA"), which waives the federal government's sovereign immunity, *see United States v. Muniz*, 374 U.S. 150, 158 (1963) (holding that, by enacting the FTCA, "Congress intended to waive sovereign immunity in cases arising from prisoners' claims"), and renders "[t]he United States . . . liable . . . relating to tort claims, in the same manner and to the same extent as a private

---

[10]   Plaintiff invokes the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq*., and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq*., in his opposition to defendants' motion, yet he alleges no viable claim under either statute. "[F]ederal courts have held that RLUIPA 'only applies to state and local governments, not a federal prison,'" *Garraway v. Lappin*, No. 4:CV-10-1697, 2012 WL 959422, at *3 (M.D. Pa. Mar. 21, 2012) (quoting *Pineda-Morales v. De Rosa*, No. 03-4247, 2005 WL 1607276, at *4 (D.N.J. July 6, 2005)), and plaintiff's bald assertion that his "freedom of religious expression came under attack because he openly displayed his cross," Compl. at 5, "does not fall within the scope of the RFRA" absent a showing that "a substantial burden is placed on his . . . ability to exercise" his religion. *Garraway*, 2012 WL 959422, at *7 (citation and internal quotation marks omitted).

individual under like circumstances . . . ." 28 U.S.C. § 2674. There are limitations under and exceptions to the FTCA, however, which militate dismissal of plaintiff's claim.

First, there is an exhaustion requirement:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies," and plaintiff's apparent "fail[ure] to heed that clear statutory command" warrants dismissal of this claim. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *see Henderson v. Ratner*, No. 10-5035, 2010 WL 2574175, at *1 (D.C. Cir. June 7, 2010) (per curiam) (affirming dismissal of FTCA claim where "[a]ppellant failed to demonstrate that he exhausted his administrative remedies before filing suit in the district court"); *Hammond v. Fed. Bureau of Prisons*, 740 F. Supp. 2d 105, 111 (D.D.C. 2010) (dismissing FTCA claim for lack of subject matter jurisdiction where plaintiff had not "established by a preponderance of the evidence that he administratively exhausted his FTCA claim with the BOP before commending this action").

Excluded from the FTCA is "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). "Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some," law enforcement officers," including BOP officers. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008).

Insofar as plaintiff demands damages arising from the confiscation of his crucifix, Bible, religious materials and other personal property by BOP staff, the claim must be dismissed.

### B. Dismissal Under Rule 12(b)(6)

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion, the "complaint is construed liberally in the plaintiff['s] favor, and [the Court grants the plaintiff] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly,* 550 U.S. at 556). "[A] complaint [alleging] facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson,* 551 U.S. at 94 (internal quotation marks and citation omitted), it too, "must plead 'factual matter' that permits the court to infer

8

'more than the mere possibility of misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79).

1. Exhaustion of Administrative Remedies

In relevant part, the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Defendants move to dismiss on the ground that plaintiff failed to exhaust his available administrative remedies prior to filing this lawsuit. *See* Defs.' Mem. at 6-8.

The PLRA's exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007). Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *See Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001). Exhaustion under the PLRA is not a jurisdictional requirement, however. *See Jones*, 549 U.S. at 216; *Woodford*, 548 U.S. at 101. It is instead an affirmative defense, *Jones*, 549 U.S. at 216, which "the defendants have the burden of pleading and proving." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (quoting *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (internal quotation marks omitted)); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.) (holding that "nonexhaustion under § 1997e(a) . . . does not impose a pleading requirement," but "creates

a defense [such that] defendants have the burden of raising and proving the absence of exhaustion"), *cert. denied sub nom Alameida v. Wyatt*, 540 U.S. 810 (2003).

The BOP's Administrative Remedy Program is the means by which a federal inmate may seek "formal review of any grievance that relates to any aspect of [his] confinement." Defs.' Mem., Ex. A ("Albright Decl.") ¶ 4. First, if the inmate has not successfully resolved the matter informally, *see* 28 C.F.R. § 542.13, he may file a formal administrative remedy request at the institutional level to the Warden. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, within 20 calendar days he may file an appeal to the Regional Director. *See* 28 C.F.R. § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's determination, within 30 calendar days he may appeal to the General Counsel at BOP's Central Office. *See id.* "Appeal to the Central Office is the final administrative appeal in the BOP," and an inmate's "administrative remedy is finally exhausted when the BOP's Central Office has issued its formal response . . . ." Albright Decl. ¶ 4.

According to the BOP's declarant, "[p]laintiff has appealed a total of five . . . administrative remedies to the Central Office." *Id.* ¶ 5. Of these five administrative remedies, two appear to be related to the claims in the lawsuit: plaintiff alleged negligent medical care and treatment (Remedy No. 665654-A1), and that "staff acted in an unsafe matter while escorting him" (Remedy No. 650837-A1).[11] *Id.* ¶ 6. Neither of these administrative remedies was exhausted prior to the filing of this lawsuit. *Id.* Defendants argue that, because plaintiff did not follow the administrative remedy process through to the final appeal with respect to these two requests, and because he did not file an administrative remedy request at all with respect to the

---

[11] The remaining three administrative remedies "are unrelated to the claims made in [this] lawsuit." Defs.' Mem., Albright Decl. ¶ 7.

remaining claims alleged in the complaint prior to filing this lawsuit, his claims are subject to dismissal. *See* Defs.' Mem. at 8.

According to plaintiff, he "initiated [grievances] through the counselor who was assigned by the Warden, but [the] Warden suppressed the filed grievance[s] in many cases and refused the filings which were the most damaging to him." Pl.'s Opp'n at 4. He further claimed that the "Warden was actively engaged in stonewalling, therefore, denying the plaintiff the right to us[e] the Prison Litigation procedure." *Id.* "Plaintiff exercised Due Diligence and made a good faith effort to solve all disputes by trying to use the grievance procedures as required by the Prison Litigation Reform Act," *id.* at 6, and to this end has submitted his own affidavit listing grievances he claims to have filed timely and were rejected. *See* Notice of Default [ECF No. 20].

Exhaustion might be excused if, for example, "prison officials refuse to provide the required grievance forms upon request or ignore such a request," *Albino v, Baca*, 697 F.3d 1023, 1034 n.7 (9th Cir. 2012), or if the inmate receives "threats of retaliation for filing a grievance," *id.* (citing *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008)). Plaintiff makes no such allegations here. Rather, he has concluded that the administrative grievance process is futile, *see* Pl.'s Opp'n, Ex. (Affidavit dated January 30, 2012), but his assessment of the viability of the process does not render the process unavailable. *See Booth,* 532 U.S. at 741 n. 6 (finding that the Court will not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *Jeanes v. U.S. Dep't of Justice,* 231 F. Supp. 2d 48, 51 (D.D.C. 2002) ("The plaintiff's belief that availing himself of those grievance procedures is futile is not a sufficient reason for bypassing portions of the administrative remedy process.").

Defendants demonstrate that plaintiff has failed to exhaust his available administrative remedies with respect to any of the matters set forth in his complaint, and their motion to dismiss on this basis will be granted. Even if plaintiff had exhausted his administrative remedies, the claims over which this court has subject matter jurisdiction still are subject to dismissal under Rule 12(b)(6).

### 2. Retaliation

According to plaintiff, because of his use of the administrative remedy process in 2009 regarding an "assault[] by a staff member who has a lengthy history of abusive behavior towards inmates," the Warden at USP Terre Haute "began to retaliate creating a living horror, which has scar[re]d the plaintiff emotionally and psychologically." Compl. at 4. The Court construes these statements as an allegation of retaliation in violation of the First Amendment for plaintiff's attempts to redress grievances. *See Byrd v. Moseley*, 942 F. Supp. 642, 644 (D.D.C. 1996) (construing plaintiff's complaint "as a damages action pursuant to 42 U.S.C. § 1983 based on the defendants' violation of the plaintiff's First Amendment rights by retaliating against him for filing a previous lawsuit").

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Anderson-Bey v. District of Columbia*, 466 F. Supp. 2d 51, 65 (D.D.C. 2006) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citation omitted)); *see Garcia v. District of Columbia*, 56 F. Supp. 2d 1, 5 (D.D.C. 1998). The act of filing an administrative grievance is an activity protected by the First Amendment. *Garcia*, 56 F.

Supp. 2d at 6. "[P]rison officials may not retaliate against an inmate for exercising a constitutionally protected right." *Adams v. James,* 784 F.2d 1077, 1082 (11th Cir. 1986); *see Pryor-El v. Kelly*, 892 F. Supp. 261, 274-75 (D.D.C. 1995) (alleging retaliation for having filed a civil complaint).

Missing from plaintiff's complaint is any mention of causation. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977). "To satisfy the causation link, a plaintiff must allege that his . . . constitutional speech was the 'but for' cause of the defendants' retaliatory action." *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011) (quoting *Hartman v. Moore,* 547 U.S. 250, 256 (2006)). Plaintiff not only bears the "burden . . . to show that his conduct was constitutionally protected," but also to show "that this conduct was a 'substantial factor' or to put it on other words, that it was a 'motivating factor'" in defendants' decision to act as they did. *Doyle,* 429 U.S. at 287. Plaintiff has not alleged, for example, "a chronology of events which may be read as providing some support for an inference of retaliation." *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979); *see Conlon v. Coughlin*, 58 F. 3d 865, 872 (2d Cir. 1995) (finding that verified complaint's allegations that plaintiff "filed two lawsuits complaining about his conditions of confinement" followed by disciplinary charges which prevented his participation in a prison program). Absent allegations that the filing of his administrative grievances was the motivating factor in the alleged acts of retaliation, his retaliation claim must be dismissed. *See, e.g., Mayo v. Fields,* No. 1:10-CV-1607, 2010 WL 2723066, at *4 (N.D. Ga. July 8, 2010) (finding that complaint did not state a retaliation claim because it did not allege facts showing a causal relationship between the protected speech and disciplinary reports against the prisoner plaintiff).

3. Age Discrimination

Plaintiff alleges that he "was often called old man by staff," and that, "when job openings became available, they were given to younger inmates [with] less seniority in the institution." Compl. at 5. Defendants argue that this statement does not adequately allege discrimination based on age. *See* Defs.' Mem. at 10. The Court concurs. The allegations of the complaint are so vague, so conclusory, and so lacking in detail that the Court simply cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, as a federal prisoner, plaintiff has no protectable interest in prison employment. *See Garza v. Miller*, 688 F.3d 480, 485 (7th Cir. 1982) (finding that federal prisoner has no "property or liberty interest in prison employment"), *cert. denied*, 459 U.S. 1150 (1983). Plaintiff sincerely may believe that defendants discriminated against him because of his age, but his belief without sufficient factual support does not survive defendants' motion to dismiss.

4. Access to the Courts

According to plaintiff, in 2011 he "was engaged in two very important court cases," one in the United States Court of Appeals for the Eleventh Circuit, and the other in an Indiana state court regarding "the adoption of [plaintiff's] seven year [old] son, Isaac." Compl. at 5. "[T]he Warden and the Captain [allegedly] confiscated all the plaintiff[']s legal documents, all legal material pertinent to both cases, therefore, denying [him] access to the courts" and depriving him "of the ability to participate in these court proceedings." *Id.* at 5-6. As a result of these actions, plaintiff alleged, "the adoption was completed, and the plaintiff will never be allowed to play a role in his son[']s life." *Id.* at 6. He notes that the Eleventh Circuit "granted [him three] extensions," *id.*, but does not describe the outcome of those proceedings in his complaint.

An inmate has a First Amendment right of access to the courts that is adequate, effective, and meaningful. *See Bounds v. Smith,* 430 U.S. 817, 821-22 (1977); *Ex parte Hull,* 312 U.S. 546, 549 (1941). It is not enough for an inmate to state in a conclusory fashion that he was denied access to the courts; rather, he also must allege actual injury as a result of the denial in that an actionable claim was rejected, lost, or prevented from being filed. *See Lewis v. Casey,* 518 U.S. 343, 356 (1996) (stating that an inmate alleging violation of *Bounds* must show actual injury, without which he has no standing to raise the claim). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotation omitted).

With respect to the adoption proceeding, plaintiff's own exhibits indicate that he was represented by appointed counsel. *See*, *e.g.,* Pl.'s Opp'n, Ex. (Appearance Form). And it appears that counsel had been appointed to represent plaintiff on appeal to the Eleventh Circuit, that "his . . . lawyer . . . concluded that the appeal is frivolous," and that counsel sought to withdraw from the case.[12] *United States v. Rivera*, 478 F. App'x 328, 329 (7th Cir. 2012). It cannot be said that, under these circumstances "an actionable claim . . . which [plaintiff] desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Lewis*, 518 U.S. at 356.

5. Race Discrimination

Plaintiff claims to have "experienced racism, which is rampant in the Terre Haute facility." Compl. at 6. According to plaintiff, cell assignments are made based on a prisoner's race. *Id.* He recounts an incident in 2010 during which Mexican prisoners were "corral[l]ed . . . in an isolated part of the prison, because of a gang related incident," and remained separate and

---

[12] Appellate counsel's motion to withdraw was granted, and the appeal was dismissed. *Rivera*, 478 F. App'x at 330.

on lockdown status for several months. *Id.* at 7. Plaintiff does not indicate whether he was among the inmates so separated, but he claims that "[n]o other group of inmates, Black or White, would have been treated in this manner." *Id.* The Court construes these assertions as alleging a violation of plaintiff's right to equal protection.

Defendants argue that, although "segregation of prisoners on the basis of race is prohibited," allowances can be made "for the 'necessities of prison security and discipline.'" Defs.' Mem. at 13 (quoting *Lee v. Washington*, 390 U.S. 333, 333 (1968) (per curiam)).[13] Although "prison authorities have the right, acting in good faith and in particularized circumstances, to take into account racial tensions in maintaining security, discipline, and good order in prisons and jails," *Lee*, 390 U.S. at 334 (Black, Harlan and Stewart, JJ, concurring), "[a] generalized expectation of racial violence is insufficient." *Mickens v. Winston*, 462 F. Supp. 910, 912 (E.D. Va. 1978). If, for example, defendants made cell assignments based on race in response to a specific threat of violence, or to further a compelling interest such as prison safety and security, race-based cell assignments may be permissible. *See, e.g., Fisher v. Ellegood*, 238 F. App'x 428, 434 (11th Cir. 2007) (finding that "racial separation after receiving an inmate's complaint that the white inmates in [plaintiff's] cell block feared violence from the black inmates in that block" both furthered a compelling interest in prison safety and "was narrowly tailored to neutralize threat of violence"); *Tooley v. Boyd*, 936 F. Supp. 685, 689 (E.D. Mo. 1996) (rejecting equal protection claim of white inmate confined to administrative segregation unit after race riot where "an internal investigation . . . concluded that the riot was the result of racial tensions between certain white inmates and black inmates on the tier[,] . . . that the white inmates

---

[13]  *In Lee*, the Supreme Court affirmed a ruling "that certain Alabama statutes violate the Fourteenth Amendment to the extent that they require segregation of the races in prisons and jails." *Lee*, 390 U.S. at 333.

16

instigated the riot[,] and that plaintiff was one of the instigators and main participants in the riot").

Plaintiff's bald assertion of race discrimination is not sufficient as it lacks enough factual weight to push his equal protection claim "across the line from conceivable to plausible," *Twombly*, 555 U.S. at 570), and it must be dismissed.

### 6. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that, after undergoing surgery at a local hospital, he "was allowed to fall by his escort/staff," notwithstanding a doctor's instructions "not to move the patient until the anesthesia wore off." *Id.* at 7. His escorts allegedly "ignored the . . . orders, and the plaintiff collapsed, causing injury to his back, neck, and shoulder." *Id.* The Court construes these allegations as plaintiff's attempt to claim "deliberate indifference to serious medical needs," so as to "constitute[] the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). "Essentially, the *Estelle* test is a two-pronged standard requiring both a serious medical need evidenced by the prisoner and deliberate indifference on the part of the prison officials." *Cox v. District of Columbia*, 824 F. Supp. 439, 441 (D.D.C. 1992). There are too few factual allegations from which the Court might conclude that plaintiff's has a serious medical need. And his claim does not rise to the level of a constitutional violation because there are no factual allegations whatsoever to show that "prison officials have prevented [him] from receiving recommended treatment or [have] denied [him] access to medical personnel capable of evaluating the need for treatment." *Id.* (quoting *Ramos v. Lamm* , 639 F.2d 559, 575 (10th Cir. 1980)). The complaint fails to address the subjective element at all, as it sets forth no factual

allegations suggesting that any particular BOP staff member was aware of yet deliberately refused to address his serious medical needs.

### III.  CONCLUSION

The Court concludes that it lacks subject matter jurisdiction over plaintiff's *Bivens*-style claims and his claim under the FTCA, and that the complaint fails to state any other claim upon which relief can be granted.  Accordingly, defendants' motion to dismiss will be granted.  An Order accompanies this Memorandum Opinion.

DATE:  March 28, 2013                                    ROBERT L. WILKINS
                                                        United States District Judge